# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 19-347
2469 N. Garnet Street, Phila, PA )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*
More particularly described in Attachment A attached hereto

located in the _____Eastern_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized)*:
More particularly described in Attachment B hereto

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 843(b), 846 | Distribution/PWID Controlled Substance; Use of Comm. Facility in furtherance of distribution of C/S; Conspiracy to Distribute C/S |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DEA Special Agent Giovanna Boisvert
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 5, 2019

*Judge's signature*

City and state: Philadelphia, PA         HON. CAROL SANDRA MOORE WELLS, USMJ
*Printed name and title*

**AFFIDAVIT**

19-347-m

**INTRODUCTION**

1. Your Affiant is Special Agent Giovanna Boisvert. Your Affiant is a Special Agent of the Drug Enforcement Administration ("DEA") and has served in that capacity for approximately 9 years. Your Affiant is currently assigned to the Philadelphia, PA Division Office. As such, Your Affiant is an "investigator or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

**EXPERIENCE**

2. As a part of my official duties, your affiant investigates criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 848, 853, and 860.

3. Based on my training and experience, Your Affiant is familiar with the ways in which drug dealers conduct their drug-related business, including, but not limited to their (a) methods of distributing narcotics; (b) methods of distributing drug proceeds; (c) use of telephone communication devices and digital display paging devices; (d) use of numerical codes and code words to identify themselves, the nature of the communication and to conduct their drug-related transactions; and (e) common practice of registering for and obtaining these communication devices under false names, or names of relatives and/or friends to avoid financial responsibilities and tracking of criminal activities by law enforcement entities.

1

4. While working with the DEA, your affiant has participated in numerous narcotics investigations, debriefed or participated in debriefings of hundreds of defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations, and has participated in all aspects of drug investigations including conducting surveillance, analyzing information obtained from court-ordered pen register and trap and trace intercepts, and analyzing telephone toll information obtained as a result of the issuance of subpoenas. Your affiant is aware that drug traffickers commonly use cellular telephones and pagers in furtherance of their drug trafficking activities and frequently change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. Your affiant is also aware that drug traffickers often speak in vague, guarded, or coded language when discussing their illegal business in an effort to further prevent detection. Your affiant has participated in numerous drug related investigations, has worked successfully with a number of informants, and has participated in the arrest and prosecution of approximately 100 individuals.

**THE TARGET LOCATION**

5. The following property is sought to be searched for contraband such as narcotics and firearms, as well as property designed or intended for use or which is or has been used as the means of committing a crime, evidence of commission of a crime, fruits of a crime, or items unlawfully possessed:

**2469 North Garnet Street, Philadelphia, PA** (a two-story property which includes on the first floor Cumberland Coffee and Donut Shop). This location appears to be open to the public during regular business hours.

## THE INVESTIGATION AND INDICTMENT

6. As outlined below, your affiant has been investigating the drug trafficking activities of Louis ALEXANDER ("ALEXANDER"), Michael ALEXANDER ("MICHAEL ALEXANDER"), Carla YOUNG ("YOUNG"), Terron HOLMAN ("HOLMAN"), Angel CARTER ("CARTER"), Martin BONAPARTE ("BONAPARTE"), and others, since March, 2016. Your affiant's investigation of the Louis ALEXANDER heroin distribution organization has identified Louis ALEXANDER as the likely source of heroin supply to the organization. The investigation, which included court-authorized intercepts over target phones for CARTER, HOLMAN, MICHAEL ALEXANDER and LOUIS ALEXANDER, also identified other street-level distributors who work on behalf of and with Louis ALEXANDER, as well as a number of principal customers of the organization who purchase approximately multiple ounces of heroin per week

7. On February 13, 2019, the federal grand jury in the Eastern District of Pennsylvania returned a multi-count indictment charging MICHAEL ALEXANDER, BONAPARTE, HOLMAN, CARTER and YOUNG with conspiracy to distribute controlled substances, multiple substantive drug distribution charges (as to everyone except YOUNG) and firearms violations (as to MICHAEL ALEXANDER). Federal arrest warrants for each of these individuals were issued in connection with the return of the indictment. The indictment was placed under seal pending arrests. The investigation, and resulting indictment, established that beginning on or about March 2016 and continuing through at least March, 2018, DEA agents arranged for two confidential sources to conduct multiple purchases of street-level quantities of heroin,

3

fentanyl and other substances from MICHAEL ALEXANDER, HOLMAN, BONAPARTE and CARTER. These transactions occurred with each of these individuals, and sometimes involved targets entering and returning from the subject premises, after which the drug transaction took place. Agents believed that these targets retrieved stored controlled substances inside the subject premises, to sell to the confidential sources. These alleged controlled substances were tested by the Philadelphia Police Department Forensic Lab, and determined to be heroin, fentanyl and other substances.

8. As set forth below, there is probable cause to believe that within the subject location there is evidence of the commission by MICHAEL ALEXANDER, Terron HOLMAN, Martin BONAPARTE, Angel CARTER and others identified below of the following crimes: the possession with intent to distribute and the distribution of controlled substances, including heroin, in violation of (a) conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846; (b) distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); (c) use of a communication facility in furtherance of and to facilitate the distribution of controlled substances, in violation of Title 21, United States Code, Section 843(b).

## EXECUTION OF SEARCH WARRANT AT THE SUBJECT LOCATION ON APRIL 4, 2018

9. On April 4, 2018, a federal search warrant issued by a U.S. Magistrate Judge, EDPA, was executed on the Cumberland Coffee and Donut Shop, at 2469 N. Garnet Street, Philadelphia, PA. During the execution of the search warrant, agents seized multiple bundles of clear ziplock packets with glassine inserts containing an off-

4

white powder, later tested and determined to be heroin, fentanyl, cocaine and cocaine base, digital scales, a grinder (used to process controlled substances), numerous small clear plastic packaging baggies (used to package controlled substances), numerous glassine packaging materials, sandwich bags and baggies (all used commonly to package controlled substances), multiple cellular telephones and a firearms box. No arrests occurred on that date.

### EXECUTION OF ARREST WARRANTS ON MARCH 5, 2019

10. On March 5, 2019, DEA agents executed an arrest warrant for MICHAEL ALEXANDER (Anthony Michael Alexander) at the subject premises, Cumberland Coffee and Donut Shop, after observing him (via pole cam) opening the roll gate of the premises and entering the premises with a key around 9:20AM. Via pole cam, your affiant observed MICHAEL ALEXANDER momentarily exit and re-enter the premises, standing outside momentarily.

11. At approximately 9:30 AM, DEA agents entered the premises to execute the arrest warrant on MICHAEL ALEXANDER. Agents observed MICHAEL ALEXANDER in the downstairs store area, and detained him. Based in part on their awareness of a second floor of the premises, that other individuals could have access to that second floor (which, upon execution of the search warrant on April 4, 2018, agents found the second floor contained a bed and what appeared to be an office with computers and other items indicating occupancy and use of that second floor area), other agents conducted a protective sweep of the entire premises to ensure their safety and determine if any other individuals were inside and upstairs in the premises.

12. In the second floor area of the subject premises, agents observed in plain

view the following: Bulk quantities of suspected heroin (tan powdery and white powdery substances), numerous packaging materials, including plastic bags, red flip top containers (commonly used to package and distribute crack cocaine), blue wax glassine envelopes (typically used to package and distribute street-level quantities of heroin), and a digital scale (used to weigh controlled substances) and a stamper with a picture of s spider (stampers are used typically to brand street-level quantities of heroin in bags).

### INFORMATION REGARDING EVIDENCE LIKELY TO BE SEIZED

13. Based on my training and experience, I am aware that drug traffickers often use multiple cellphones and maintain books, records, receipts, notes, ledgers, passports, airline tickets, money orders and/or other papers relating to their travel and transportation, ordering, sale and distribution of drugs; that drug traffickers commonly front (provide drugs on consignment) drugs to their clients; that the aforementioned cellphones, books, records, ledgers, etc. are maintained where the drug traffickers have ready access to them including their residences and vehicles they are using to conduct their drug trafficking business. Further, I know that indicia of occupancy, residency and ownership of premises, including but not limited to utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, identification documents and keys are often maintained at such drug trafficking locations.

14. Based on my training and experience, I am aware that drug traffickers frequently possess firearms and other weapons at the premises where they conduct drug trafficking or in vehicles used to conduct drug transactions. Persons who traffic in drugs often maintain at their residences and other locations where they conduct drug trafficking activities unsold or undistributed supplies of controlled substances and other drugs, as

well as the drug paraphernalia including chemical dilutants, weighing scales, mixing bowls, glassine bags, spoons, which are utilized in the weighing and packaging of controlled substances needed to be used to break down drugs into smaller quantities for distribution.

15. I am also aware through my training and experience that drug traffickers often store large amounts of money they have amassed through their narcotics trafficking activities at their residences or residences owned/rented by family members or girlfriends or in the vehicles they are using for drug trafficking activities. In addition, I am aware based on my training and experience that drug traffickers also store large amounts of money that they have amassed in their narcotics trafficking activities at certain residences they believe are not known to law enforcement in order to avoid the money being seized by law enforcement.

16. Based on my training and experience, I know that individuals involved in drug trafficking often use multiple cellphones, including but not limited to blackberries, smart phones or PDAs to store the telephone numbers for their drug trafficking associates. I am aware that those involved with drug trafficking often keep old cellphones at their residences to allow the individuals to restore contacts into newer cellphones.

17. Based on my training and experience and the training and experience of other agents, I know that individuals involved in drug trafficking often maintain more than one phone or more than one SIM card device, in order to have multiple avenues to facilitate drug trafficking activities, and in an attempt to avoid detection by law enforcement. I am aware that individuals involved in drug trafficking often times utilize

7

pre-paid cellular telephones which do not maintain specific subscriber information, and/or use phones subscribed to in the name of third person, in order to mask their direct linkage to telephones utilized in furtherance of drug trafficking activities. Further, those involved in drug trafficking often change SIM cards in order to make it difficult for law enforcement to determine their records. Based on my training and experience, as well as the training and experience of other agents, I know that individuals involved in drug trafficking also frequently switch telephone numbers and/or phones. Despite the constant switching of active telephone numbers, drug traffickers often keep old phones.

18. Based on my training and experience, I know that drug traffickers commonly utilize their cellular telephones to communicate with co-conspirators to facilitate, plan, and execute their drug transactions. For example, I know that drug traffickers often store contacts lists, address books, calendars, photographs, videos, and audio files, text messages, call logs, and voice mails in their electronic devices, such as cellular telephones, to be used in furtherance of their drug trafficking activities.

19. Specifically, I know that those involved in drug trafficking communicate with associates using cellular telephones to make telephone calls. If they are unable to reach the party called, they frequently leave voice mail messages. I am aware that Apple-based and Android-based phones download voice mail messages and store them on the phone itself so that there is no need for the user to call in to a number at a remote location and listen to the message. In addition, I know those involved in drug trafficking communicate with associates using cellular telephones and tablets to send e-mails and text messages and communicate via social media networking sites. By analyzing call and text communications, I may be able to determine the identity of co-conspirators and

associated telephone numbers, as well as if there were communications between associates during the commission of the crimes.

20. Furthermore, cellular telephones also contain address books with names, addresses, photographs, and phone numbers of a person's regular contacts. I am aware that drug traffickers frequently list drug associates in directories, often by nickname, to avoid detection by others. Such directories as the ones likely contained in the seized cellular telephones, are one of the few ways to verify the numbers (i.e., telephones, pagers, etc.) being used by specific traffickers.

21. In addition, I know that those involved with drug trafficking often take photographs or make videos of themselves and their co-conspirators and retain them on their electronic devices such as cellular telephones. This evidence would show associations between accomplices, i.e. photographs of accomplices and/or individuals common to co-conspirators. I am also aware that drug traffickers often take photographs or make videos of drugs and drug proceeds with their cellular telephones and tablets. Based on my training and experience, those who commit these crimes often store these items on their phones in order to show to associates, and/or to upload to social media.

22. Furthermore, based on my training and experience and the training and experience of other agents, I know that drug traffickers often use a cellular phone's Internet browser for web browsing activity related to their drug trafficking activities. Specifically, drug traffickers may use an Internet search engine to explore where banks or mail delivery services are located, or may use the Internet to make reservations for drug-related travel. In addition, I know that drug traffickers also use their cellular telephone's Internet browser to update their social networking sites in order to communicate with co-

conspirators, and to display drugs and drug proceeds or to post photographs of locations where they have traveled in furtherance of their drug trafficking activities.

23. In addition, drug traffickers sometimes use cellular telephones as navigation devices, obtaining maps and directions to various locations in furtherance of their drug trafficking activities. These electronic devices may also contain GPS navigation capabilities and related stored information that could identify where these devices were located.

24. Furthermore, based on my training and experience, forensic evidence recovered from the review of a cellular telephone can also assist in establishing the identity of the user of the device, how the device was used, the purpose of its use, and when it was used. In particular, I am aware that cellular telephones are all identifiable by unique numbers on each phone, including: serial numbers, international mobile equipment identification numbers (IMEI) and/or electronic serial numbers (ESN). The search of each phone helps determine the telephone number assigned to each device, thus facilitating the identification of the phone as being used by members of the conspiracy. In addition, I am aware that by using forensic tools, information/data that users have deleted may still be able to be recovered from the device.

25. Based on the forgoing, I submit that there is probable cause to search the properties identified above and more fully described in the Attachment A, for the items listed on the Attachment B, copies of which are included here as attached, which constitute evidence of the commission and/or proceeds of the following crimes: the possession with intent to distribute and the distribution of controlled substances, including cocaine, and/or heroin, in violation of (a) conspiracy to distribute controlled

substances, in violation of Title 21, United States Code, Section 846; (b) distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

Giovanna Boisvert
Special Agent
Drug Enforcement Administration

Sworn to and subscribed
to before me this 5th day of March, 2019.

HONORABLE CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF PENNSYLVANIA

## ATTACHMENT A

### 2469 N. Garnet Street, Philadelphia, PA

2469 North Garnet Street, Philadelphia, PA is a two-story corner building, located on the southeast corner, at the intersection of North Garnet and West Cumberland Streets, Philadelphia, PA. The property includes on the first floor "Cumberland Coffee and Donut Shop." The subject premises is a tan stucco building with a corner door entry, flanked by a window on each side of the door. The windows and the door are all glass, but have roll cage covers that lock for protection. The second level is also supported by a column in the middle of the corner door entry, on the outside. The subject premises has a sign hanging on the West Cumberland Street side of the building saying "Cumberland Coffee and Donuts." Over the air conditioner unit imbedded in the wall on the West Cumberland facing façade is a tan-sided jut-out with several windows. Entrance is on the West Cumberland side of the building.



## ATTACHMENT B

### Property to be Seized

1. Controlled substances, drug paraphernalia, including but not limited to, chemical dilutants, weighing scales, mixing bowls, glassine bags, spoons, packaging materials, packing peanuts and shipping materials utilized in the weighing and packaging of controlled substances.

2. Firearms and other weapons, and ammunition.

3. Any and all United States currency, money counters and any item used in the counting of currency.

4. Any and all cellular telephones and personal data assistants ("PDA's").

5. All the records, documents, and materials (including both originals and copies) described below, in whatever form/format and by whatever means such records, documents, and materials, their drafts, or their modifications may have been created or stored, including but not limited to any (a) handmade or written form, (b) photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motions pictures, or photocopies), and mechanical form (such as printing or typing), and (c) electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact discs, or any information on an electronic or magnetic storage device, such as floppy diskettes, hard disks, backup tapes, CD-ROMs, DVDs, optical discs, printer buffers, smart cards, computers, cellular telephones, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as printouts or readouts from any such storage device):

   a. Books, records, receipts, notes, ledgers, or electronic data relating in any way to the receipt, storage, transportation, ordering, tracking, purchases/sales and distribution of controlled substances;

   b. Any and all identification records and documents, including but not limited to birth certificates, state identification cards, social security cards, and driver's licenses.

   c. Any and all banking and other financial transaction records, including but not limited to monthly savings and checking statements, canceled checks and banking communications, deposit tickets, withdrawal receipts, certificates of deposits, pass-books, money drafts, money orders (blank or endorsed), check cashing logs, gambling records and receipts, wire transfer logs, cashier's checks, bank checks, money orders, safe deposit box keys, safes, money wrappers and wire transfers.

   d. Indicia of occupancy, residency, and ownership or use of the subject premises, including, but not limited to, utility and telephone bills, cancelled envelopes, rental, purchase or lease agreements, identification documents and keys.

    e.    Address and/or telephone books, rolodex indicia, electronic organizers, telephone paging devices and the memory thereof and any papers, records or electronic data reflecting names, addresses, telephone numbers, pager numbers of co-conspirators, sources of drug supply, drug customers.

    f.    Photographs of Louis ALEXANDER ("ALEXANDER"), Michael ALEXANDER ("MIKE"), Carla YOUNG ("YOUNG"), Terron HOLMAN ("HOLMAN"), Angel CARTER ("CARTER"), Martin BONAPARTE ("BONAPARTE"); photographs of suspected controlled substances, cash, firearms.

All of which constitute fruits, evidence and/or instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846.